Steven Wallach
5 Mapleton Road
Princeton, New Jersey 08540-9614
Phone: (609) 987-9100
Fax: (609) 987-9101
SS no. 1642
e-mail: wallach@att.net

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FLOORGRAPHICS, INC. | § | |
| American Metro Center | § | |
| 200 American Metro Boulevard, Suite 120 | § | |
| Hamilton, NJ 08619 | § | CIVIL ACTION NO.: |
| | § | |
| and | § | |
| | § | |
| RICHARD REBH | § | |
| 1600 North Oak Street, Unit 1814 | § | |
| Arlington, VA 22209 | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| FRED POTOK | § | |
| 992 Sheffield Lane | § | |
| Huntington Valley PA 19006 | § | JURY TRIAL DEMANDED |
| | § | |
| and | § | |
| | § | |
| KATHYRN CUNNINGHAM | § | |
| 308 Larkspur Lane | § | |
| Jackson, NJ 08527 | § | |
| | § | |
| and | § | |
| | § | |
| ANTHONY CUNNINGHAM | § | |
| 308 Larkspur Lane | § | |
| Jackson, NJ 08527 | § | |
| | § | |
| Defendants | § | |

## COMPLAINT

Plaintiffs FLOORgraphics, Inc. ("FGI") and Richard Rebh, by and through their undersigned attorneys, bring this civil action against Defendants for violations of the Federal Computer Fraud and Abuse Act as well as the Wire and Electronic Communications Interception and Interception of Oral Communications Act, as well as other statutory and common law claims. **Plaintiffs demand a trial by jury of all claims.**

As confirmed through investigations by the New Jersey Division of Criminal Justice, on multiple occasions in New Jersey between February and May 2006, Potok and the other Defendants made unauthorized entry into the email accounts of FGI and Richard Rebh and accessed FGI's business and Richard Rebh's personal emails from remote locations, including from the residence of Defendants Anthony and Sharon Cunningham in New Jersey. Defendant Potok, a former officer and director of FGI, has also engaged in other breaches of confidence and fiduciary duty, some alone and others in concert with other Defendants.

A.      **The Parties**

1.      Plaintiff FLOORgraphics, Inc. ("FGI") is a Pennsylvania corporation with its principal place of business at American Metro Center, 200 American Metro Boulevard, Suite 120, Hamilton, New Jersey, 08619.

2.      Plaintiff Richard Rebh is the Chairman, President, and CEO of FGI and a resident of the state of the Virginia.

3.      Defendant Fred Potok is a former officer and director of FGI and a resident of the state of Pennsylvania.

4.      Defendant Kathryn Cunningham is a resident of the state of New Jersey.

5.      Defendant Anthony Cunningham is a resident of the state of New Jersey.

**B.**     **Venue and Subject Matter Jurisdiction**

6.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a).

7.     This Court has subject matter jurisdiction of this dispute pursuant to 28 U.S.C. §1331.

**C.**     **FGI's Background and Business**

8.     FGI was founded in Cherry Hill, New Jersey in 1996 and pioneered the use of floor advertising in retail stores.  In floor advertising, FGI introduced a new and effective means of extending the advertising campaigns of consumer packaged goods manufacturers ("CPGs") directly to the point-of-sale of the CPG's product inside retail grocery stores.

9.     In 1998, Richard Rebh became the CEO of FGI, and Fred Potok became its President.  However, from mid-1998 Potok exercised limited duties of importance to the success of the Company.  For example, after June 1998, Potok had no real further involvement with the grocery retailers with whom FGI did business.  Potok worked to develop business with automotive stores and convenience stores, but no sales resulted from his efforts.  Potok also worked to develop new products for FGI, and nothing he created amounted to substantial income for FGI.  His operational responsibilities required limited time commitments and were not significant after 2003.  To provide Potok additional areas to contribute, Richard Rebh gave him further tasks, such as managing the company's real estate leases and facility moves, but again Potok typically underperformed.

10.     Inc. Magazine's 2002 annual survey named FGI the 39th fastest growing private company in the nation.  In the Inc. Magazine 2003 survey the following year, FGI rose to the nation's 11th fastest growing company, and FGI was placing floor advertising, as well as other forms of in store-marketing programs, in more than 10,000 stores across the country.  Richard

Rebh and George Rebh, FGI's Executive Vice President, were named New Jersey Entrepreneurs of the Year in the marketing, manufacturing, and distribution category by Ernst & Young, in recognition of the company's successful establishment of floor advertising as a new business.

11.     Following 1998, Richard Rebh, as CEO of FGI, and George Rebh, as Executive Vice President of FGI, along with others at FGI working directly in the grocery and mass merchandise segments, were responsible for the success of FGI.

12.     By the late 1990s, it became known that Potok, a real estate broker in New Jersey, had been subject to disciplinary action.  The notice by the New Jersey Real Estate Commission, Department of Banking and Insurance, explained the disciplinary action:

> Fred Potok, broker, and Island RMA, Inc., t/a Atlantic Properties, Atlantic City, N.J. 4/2/96
> Atlantic Properties was the property manager for several owners of rental properties in the Atlantic City area. Potok and his firm were found guilty of commingling the funds of others which were to have been held by them as brokers acting as the temporary custodians of the funds of others in real estate transactions, and failing to pay over those monies to the owners and/or tenants to whom the money belonged. The evidence at the hearing established that the rents and security deposits which the broker collected were converted by Potok for his own use. Potok's license as a broker was revoked for 10 years. He was also declared ineligible to hold a salesperson's license for 7 years, fined $30,000, and is required to make restitution of over $12,000.

www.njstatelib.org/digit/905/r287/summer1996.htm

13.     Following the disciplinary action by the New Jersey Real Estate Commission, Potok pursued real estate activities in Pennsylvania, despite being employed full time at FGI and having the title of President of FGI.  Potok acted as a real estate developer and salesperson and spent substantial time on this personal line of business from at least 2003 forward.

 D.     **Breaking and Entering and Monitoring of Emails by Defendants**

14.     After returning from business travel in February 2006, plaintiff Richard Rebh became concerned that his emails had been accessed or deleted without his authorization.  Rebh

reported this to the New Jersey State Police, and on February 20, 2006, State Investigators from the Division of Criminal Justice, assisted by FGI's computer network administrator, recovered log files from FGI's web server at FGI headquarters in Hamilton, New Jersey.  A review of the logs from February 17, 2006 and February 18, 2006 showed that computers with IP addresses 68.81.121.176 and 67.83.89.8 had accessed Plaintiff Richard Rebh's email account. Neither of these IP addresses were internal to FGI (according to WHOIS lookups, 68.81.121.176 was controlled by Comcast, and 67.83.89.8 was controlled by Cablevision/CSC Holdings, Inc.)

15.     Further review of the logs revealed that over two hundred messages from Richard Rebh's account were downloaded by a computer with IP address 67.83.89.8, and then deleted from the server at approximately 1:30 AM on February 18, 2006.

16.     On February 22, 2006, Defendant Potok entered Richard Rebh's locked office at FGI headquarters at approximately 8:00 PM and accessed Rebh's computer without authorization. Rebh had left to attend a business dinner at approximately 7:15 PM and returned at approximately 9:00 PM. Upon his return and his viewing of his computer monitor, Richard was alerted to the activity by noticing several open windows on the desktop that were not there when he left the office.

17.     Upon further examining the activity log on his computer, Richard Rebh discovered that his computer had been accessed in the time Rebh was gone from his office the previous evening; including the reading of email from his email program and the apparent forwarding of an email message with an incomplete destination email address field. Rebh discovered that a shortcut to network share 'fpotok' had been created on Rebh's computer, which indicated that files were read from and/or copied to the shared folder on the computer of Fred Potok.

18.    Defendant Potok was not authorized to enter the locked Rebh office or to access his password-protected computer for any purpose.

19.    On February 26, 2006, and February 28, 2006, with the consent of Richard Rebh, the New Jersey Division of Criminal Justice, Electronic Surveillance Unit, installed video surveillance cameras in the office of Richard Rebh at FGI. The cameras were set to record activity occurring in the office from February 28, 2006 to March 3, 2006, while Rebh was scheduled to be out of town on business.

20.    On March 2, 2006, when Richard Rebh attempted to remotely access his email he was unable to view any messages from the previous day received prior to approximately 11:00 PM.  These were messages which he had previously viewed, and it became apparent that they had been downloaded or removed from the server through no action of Rebh's.

21.    On March 3, 2006, Richard Rebh attempted to remotely access his email and was unable to view any messages from the previous day.  Again, these were messages which he had previously viewed, showing that they had been downloaded or removed from the server through no action of his own.

22.    Defendant Potok was recorded by a police surveillance camera entering the locked office of Richard Rebh at approximately 8:50 PM on March 1, 2006 (time and date information was written to the surveillance tape, based on the time setting on the recorder).  Potok looked on and around Rebh's desk, located paper documents in a file folder on the left side of the desk, removed the documents from the office for approximately two minutes, then returned, placing them back in the same folder on the desk.  Potok powered-on the desktop computer and logged in with a password that he apparently read from a piece of paper he removed from his pocket. Potok accessed some number of documents and/or applications on the computer over a period of

approximately one hour.  Potok turned off the computer and left the office at approximately 10:06 PM.

23.     Potok, again entered the office of Richard Rebh at approximately 11:25 PM on March 2, 2006. Potok looked on and around the desk, powered-on the desktop computer and logged in with a password that he apparently read from a piece of paper he removed from his pocket. Potok accessed some number of documents and/or applications on the computer over a period of 20 minutes. Potok turned off the computer and left the office at approximately 11:45 PM.

24.     The folder that roused Potok's interest on Rebh's desk on March 1, 2006, contained copies of a contract between FGI and Nestle. Potok would have little personal interest in the information contained in this document. The information would, however, be extremely valuable to an FGI competitor. The security surrounding the Nestle contract was "need to know." Potok had no role in the Nestle account, and no information had been shared with him.

25.     Additional analysis of FGI email server log files revealed that the source IP address accessing Richard Rebh's electronic mail account on February 17, 2006, controlled by Comcast, also accessed the electronic mail account fpotok@floorgraphics.com on February 17, 2006.  This account is Fred Potok's FGI electronic mail account.

26.     The 'fpotok' network shared folder was created on February 22, 2006, during the same time that Richard Rebh was out of the office, which indicates that files were likely accessed from or copied to Fred Potok's computer during that time.

27.     In response to a grand jury subpoena sent on March 13, 2006, to CSC Holdings, Inc. on the basis of IP/date and time information recovered from FGI email server logs showing remote access to Richard Rebh's email account on February 11, 2006, February 12, 2006,

February 18, 2006, and February 21, 2006, CSC Holdings reported that this remote accessing of FGI and Richard Rebh's emails over this multi-day period took place from a remote accessing site at the address of Defendants Kathryn and Anthony Cunningham at 308 Larkspur Lane, Jackson, NJ 08527.

28.     In response to a grand jury subpoena send on March 17, 2006 to Comcast on the basis of IP/date and time information recovered from FGI email server logs showing remote login attempts to enter Richard Rebh's email account between March 12, 2006 and March 14, 2006, Comcast identified the subscriber as Fred Potok, 992 Sheffield Lane, Huntington Valley, PA 19006.  This address matches the residential address of Fred Potok.

29.     Responses to grand jury subpoenas attributed subscriber Fred Potok, 992 Sheffield Lane, Huntington Valley, PA 19006 to unauthorized accesses to Richard Rebh's electronic mail account on more than fifty (50) days during the period, many of which days involved the account being accessed at a rate of every several minutes during each twenty-four (24) hour period. The address was a service address and listed an email user ID of "fpotok1".

30.     A shortcut file to Fred Potok's shared folder found on Rebh's computer indicates that data was transferred from the computer of Richard Rebh to the computer of Fred Potok on February 22, 2006.

31.     The unauthorized access to documents from Defendants' unlawful accessing of FGI's and Rebh's electronic mail account continued through August 2006.

32.     Fred Potok, while an officer and director of FGI, has engaged in the illegal access of data from New Jersey, facilitated by an Internet account attributed to Fred Potok at his residence.

33.     A conspiracy exists between Defendants and an as yet unknown number of individuals to illegally access and use data stored on a computer operated by and in a computer account maintained by Richard Rebh, for the purpose of causing harm to FLOORgraphics, Inc., and Potok is a member of this conspiracy.

**E.     Potok's Removal and then Sharing of FGI Business Information with FGI's Competitor News America.**

34.     Potok's employment at FGI was terminated for cause effective immediately following a special meeting of the FGI Board of Directors held on September 20, 2006, for a number of significant reasons, including his poor work performance and failure to fulfill his job responsibilities to the Company, despite having been given ample notice and opportunity to address those failures; his abuse of personal time off; and his display of gross insubordination.

35.     In mid-2007, while still holding his position as a director of FGI, Potok contacted litigation counsel for News America Marketing ("News America"), FGI's principal competitor in the in-store marketing industry.    At the time, FGI was involved in litigation with News America Marketing in the District of New Jersey, alleging several business torts against News America. At the time, Potok knew and understood that the attorney he contacted was seeking assistance to defeat the lawsuit of FGI against News America.

36.     Potok was removed as a director of FGI on July 27, 2007 for cause, including breach of fiduciary duties he owed to FGI, in addition to other misconduct.

37.     Potok continued to communicate by email and phone with litigation counsel for News America following Potok's removal as an FGI director.

38.     Despite his legal obligation to maintain the confidentiality of FGI business information not only during his tenure as an officer and director but also following his termination

from those positions, Potok maintains that he did not know that he had any ongoing confidentiality obligations.

39.     For reasons including, but not necessarily limited to, his interest in promoting a sale of his FGI stock, Potok provided confidential FGI information to News America – FGI's primary competitor, with whom FGI was then in litigation – for its due diligence, including the amount of cash FGI held in bank accounts.

## COUNT 1

## VIOLATION OF COMPUTER FRAUD & ABUSE ACT

## (18 U.S.C. § 1030)

## (FGI v. All Defendants)

40.     FGI repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

41.     FGI maintains secure, password-protected computer systems.  The information stored on FGI's computers and system is proprietary, confidential, non-public, and trade secret information of FGI.

42.     FGI's computers and the information stored on those computers are used in interstate or foreign commerce or communication and are protected within the meaning of this statute.

43.     Defendants accessed FGI's business data stored on a computer used in interstate commerce or communication and therefore "protected" under 18 U.S.C. §1030(e)(2)(B).

44.     Defendants intentionally accessed FGI's computer system without authorization, and thereby obtained valuable information from FGI's protected computers.  Defendants' conduct involved interstate communication, in violation of 18 U.S.C. §1030(a)(2).

45.     FGI maintained a substantial measure of secrecy with respect to the information improperly accessed by Defendants.   Without illegal entry into FGI's computers, Defendants would not otherwise have obtained FGI's confidential, proprietary, and trade secret information. Defendants knew that FGI protected this information, but nonetheless knowingly took FGI's valuable information with the intent of defrauding FGI.

46.     Defendants intentionally accessed FGI's protected computer without authorization, and as a result of their conduct, caused damage to FGI, in violation of 18 U.S.C. § 1030(a)(5)(A)(iii).

47.     Defendants' conduct caused FGI economic damage or loss in an amount to be proved at trial, an amount that in any event aggregated at least $5,000 in value during any 1-year period. 18 U.S.C. § 1030(a)(5)(B)(i)

## COUNT 2

## VIOLATION OF NEW JERSEY COMPUTER-RELATED OFFENSES ACT

## (N.J. STAT. § 2A:38a-1 et seq.)

## (FGI v. All Defendants)

48.     FGI repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

49.     Defendants accessed FGI's computers knowingly, purposefully and without authorization on a number of occasions.

50.     As a result of these actions, Defendants accessed, viewed, and took data and information of FGI's.

51.     As a result of Defendants' acts, FGI has been damaged in its business or property in an amount to be proved at trial.

52.     Defendants' acts described herein constitute a violation of the New Jersey statute regarding actions for computer-related offenses, which is codified at New Jersey Statute §2A:38A-1 through §2A:38A-6.

## COUNT 3

## ILLEGAL ELECTRONIC INTERCEPTIONS

## (18 U.S.C. § 2520)

## (FGI v. All Defendants)

53.     FGI repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

54.     Defendants intentionally intercepted, endeavored to intercept, and procured another person to intercept and endeavored to intercept, electronic communications of Plaintiffs in violation of 18 U.S.C. § 2511.

55.     Within the applicable limitations period, Defendants further intentionally disclosed, and endeavored to disclose, to other persons the contents of electronic communication of Plaintiffs, knowing or having reason to know that the information was obtained through the illegal interception of an electronic communication in violation of 18 U.S.C. § 2511.

56.     Within the applicable limitations periods, Defendants further intentionally used, or endeavored to use, the contents of Plaintiffs' electronic communications, knowing or having reason to know that the information was obtained through the illegal interception of an electronic communication in violation of 18 U.S.C. § 2511.

57.     Plaintiffs did not authorize the illegal actions.

58.     Overt actions in furtherance of the violations above have taken place within the applicable limitations period.

59.     Pursuant to 18 U.S.C. § 2520, FGI is entitled to the greater of the actual damages suffered by plaintiff and any profits made by Defendants as a result of the violations of law alleged; or statutory damages of whichever is the greater of $100 a day for each day of violation against each plaintiff or $10,000 per plaintiff.

60.     Defendants are responsible to FGI for compensatory damages, punitive damages, costs of suit, reasonable attorney's fees, and costs of investigation and litigation.

## COUNT 4

### VIOLATION OF THE NEW JERSEY COMPUTER THEFT ACT

#### (FGI v. All Defendants)

61.     FGI repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

62.     Defendants have engaged in crimes of Computer Theft (N.J.S.A. 2C:20-25) and conspiracy to commit the foregoing offenses (N.J.S.A. 2C:5-2).

63.     At least two different individuals were involved in this unauthorized remote access. This and other facts show the existence of a conspiracy to illegally access and use data stored on a computer operated by Richard Rebh for the purpose of causing harm to FGI, and that Defendants were involved in this conspiracy.

## COUNT 5

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP/PROSPECTIVE CONTRACTUAL RELATIONS

#### (FGI v. All Defendants)

64.     FGI repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

65.    Through its years of dealing with retailers and CPGs and providing floor advertising and other in-store marketing services, FGI established a valid, advantageous, profitable business relationship with retailers and CPGs, and a reasonable expectancy that the relationship and its mutual benefits would continue.

66.    Defendants knew and were aware of FGI's business relationships.

67.    Defendants intentionally interfered with these relationships.  This interference was without justification or excuse.

68.    FGI has suffered damages as a result of this interference, including but not limited to loss of revenues, profits, enterprise value and additional damages which it will prove at trial.

69.    Defendants' intentional and malicious conduct was designed to destroy FGI's relationships as well as its entire business and warrants the imposition of punitive damages against defendants.

## COUNT 6

## MISSAPPROPRIATION OF TRADE SECRETS

### (FGI v. All Defendants)

70.    FGI repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

71.    FGI possessed trade secrets that were communicated in confidence to certain FGI employees.

72.    Potok intentionally recruited other individuals to access, intercept and download FGI's confidential information and trade secrets.

73.    Defendants' acts as described herein constitute the misappropriation of FGI's trade secrets under the common law.

74.     Defendants' acts have caused FGI to suffer injury, including declining sales, lost profits, and loss of good will, and all injuries heretofore set forth.

## COUNT 7

## BREACH OF FIDUCIARY DUTY

### (FGI v. Potok)

75.     FGI repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

76.     Defendant Potok had a fiduciary duty to FGI during the period he was an officer and a director of FGI.

77.     Defendant Potok had a fiduciary duty to maintain the confidentiality of FGI business information he received while an officer and director and to keep it confidential from a competitor of FGI.

78.     In breach of his fiduciary duties, Potok intentionally accessed, intercepted and downloaded FGI information and emails and recruited other individuals to access, intercept and download FGI's information and emails.

79.     In breach of his fiduciary duties, in 2007, Potok intentionally disclosed confidential FGI business information to News America, a competitor of FGI.

80.     In breach of his fiduciary duties, Potok carried on a real estate sales and development practice, secret from FGI, that prevented him from performing his duties as an officer of FGI.

81.     In breach of his fiduciary duties, Potok made patent applications in his own name rather than in the name of FGI or the names of the inventors at FGI.

82.     Defendants' acts have caused FGI to suffer injury, including declining sales, lost profits, and loss of good will, and all injuries heretofore set forth.

## COUNT 8

## CONSPIRACY TO VIOLATE FIDUCIARY DUTIES

### (FGI v. All Defendants)

83.     FGI repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

84.     Defendant Potok had fiduciary duties to FGI during the period he was an officer and a director of FGI.  All defendants knew he had those duties.

85.     Defendants conspired to permit Potok, in breach of his fiduciary duties, to intentionally access, intercept and download FGI information and emails.

86.     Defendants' acts have caused FGI to suffer injury, including declining sales, lost profits, and loss of good will, and all injuries heretofore set forth

## COUNT 9

## INVASION OF PRIVACY

### (Richard Rebh v. All Defendants)

87.     Richard Rebh repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

88.     Richard Rebh had a reasonable expectation of privacy against unauthorized accessing, interception and downloading of his emails on his FGI email account.

89.     Richard Rebh's emails, in addition to FGI business information, contain facts about himself that he does not expose to the public and keeps privately to himself or his family and close friends.

16

90.    Defendants accessed Rebh's FGI emails knowingly, purposefully and without authorization on a number of occasions.

91.    As a result of these actions, Defendants accessed, viewed, and took data and information of Rebh's and invaded his privacy.   Defendants' actions were outrageous and offensive.

92.    There was no legitimate interest in Defendants' sharing of this information with one another or with others.

93.    As a result of Defendants' acts, Rebh has been damaged in an amount to be proved at trial.

### COUNT 10

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Richard Rebh v. Potok)

94.    Richard Rebh repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

95.    Defendants accessed Rebh's FGI emails knowingly, purposefully and without authorization on a number of occasions and thereby intentionally inflicted emotional distress upon him.

96.    Defendant Potok intended to inflict emotional distress on Richard Rebh.

97.    The conduct of Defendant was extreme and outrageous.

98.    Defendant's conduct caused Richard Rebh severe emotional distress.

99.    As a result of Defendants' acts, Rebh has incurred medical costs and permanent injury and has been damaged in an amount to be proved at trial.

## COUNT 11

## <u>REPAYMENT OF LOAN</u>

### (FGI v. Potok)

100.    FGI repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

101.    In 2001, FGI loaned Potok $150,000 and Potok promised to FGI $150,000 plus interest.

102.    Potok also has taken other advances from FGI.  For example, in March 2001, FGI advanced Potok $9,316.00 for his personal taxes, and in August 2001, FGI advanced him $4,000.00 for personal reasons.

103.    Following Potok's termination as a director, FGI has demanded repayment of the loan and advances, and Potok has failed to pay the monies owed on the note.

104.    Potok is liable to FGI for these loans and advances plus interest compounded since 2001.

## COUNT 12

## <u>TRESPASS</u>

### (FGI v. Potok)

105.    FGI repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

106.    Defendant Potok entered the office of Richard Rebh at FGI without authority of FGI and carried away property of FGI.

107.    Defendant's actions were inconsistent with his job duties and the purposes of FGI and the office he entered.

108.    Defendant abused his position as President of FGI to effect his trespass into the office of Richard Rebh at FGI.

109.    Defendants' acts have caused FGI to suffer injury, including declining sales, lost profits, and loss of good will, and all injuries heretofore set forth.

## COUNT 13

## LARCENY

## (FGI v. Potok)

1.    FGI repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

2.    Defendant Potok entered the office of Richard Rebh at FGI without authority of FGI and carried away property of FGI.

3.    Defendant's actions were inconsistent with his job duties and the purposes of FGI and the office he entered.

4.    Defendant abused his position as President of FGI to remove documents and information from the office of Richard Rebh at FGI.

5.    Defendants' larcenous acts have caused FGI to suffer injury, including declining sales, lost profits, and loss of good will, and all injuries heretofore set forth.

## REQUEST FOR RELIEF

WHEREFORE, FGI respectfully requests that this Court award monetary damages to FGI for all damages sustained as a result of the complained of acts of the Defendants, together with punitive damages, special damages, attorney's fees, costs of suit, interest, treble damages, and all such other relief as the Court deems appropriate.

Respectfully submitted,

*Steven Wallach*

_____

Steven Wallach
5 Mapleton Road
Princeton, New Jersey 08540-9614
Phone: (609) 987-9100
Fax: (609) 987-9101


OF COUNSEL:

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
Phone: (202)237-2727
Fax: (202) 896-3115
wisaacson@bsfllp.com
Pro Hac Vice Motion being filed